Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 22, 2003          Decided June 20, 2003

No. 02-5307

HOLY LAND FOUNDATION FOR RELIEF AND DEVELOPMENT,
APPELLANT

v.

JOHN D. ASHCROFT, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00442)

*John D. Cline* argued the cause for appellant. With him on the briefs was *John W. Boyd*.

*Douglas Letter*, Terrorism Litigation Counsel, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *H.*

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Thomas Byron III*, Attorney, U.S. Department of Justice, and *David D. Aufhauser*, General Counsel, U.S. Department of Treasury.

Before: GINSBURG, *Chief Judge*, and SENTELLE and HENDERSON, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: In December 2001, the Office of Foreign Asset Control ("OFAC") designated Holy Land Foundation ("HLF") as a "Specially Designated Global Terrorist" ("SDGT") pursuant to an Executive Order issued under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* ("IEEPA"). This designation was accompanied by an order blocking all of the organization's assets. HLF brought an action in the district court challenging this designation and before us now appeals the lower court's decision which affirmed OFAC's actions and dismissed the complaint in substantial part. For the reasons explained below, we hereby affirm the district court's dismissal in part, and order summary judgment for the government.

## I. Background

The IEEPA, 50 U.S.C. § 1701 *et seq.*, authorizes the President to declare a national emergency when an extraordinary threat to the United States arises that originates in substantial part in a foreign state. Such a declaration clothes the President with extensive authority set out in 50 U.S.C. § 1702. Under that section he may investigate, regulate, or prohibit transactions in foreign exchange, banking transfers, and importation or exportation of currency or securities by persons or with respect to property, subject to the jurisdiction of the United States. § 1702(a)(1)(A). Of further special concern to the Holy Land Foundation, he may

> investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or

privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States. . . .

§ 1702(a)(1)(B).

In 1995, the President issued Executive Order 12,947 pursuant to the IEEPA. Exec. Order No. 12,947 (60 Fed. Reg. 5079 (Jan. 23, 1995)). That order designated certain terrorist organizations, including the Palestinian organization Hamas, as "Specially Designated Terrorists," or SDTs, and blocked all of their property and interests in property. The order also allowed for additional designations if an organization or person is found to be "owned or controlled by, or to act for or on behalf of" an SDT. *Id.*

In 2001, as part of his response to the attacks of September 11, the President issued Executive Order 13,224, similar to Order 12,947, pursuant to the IEEPA. Exec. Order No. 13,224 (66 Fed. Reg. 49,079 (Sept. 23, 2001)). Order 13,224 designated specified terrorist organizations, again including Hamas, as "Specially Designated Global Terrorists," or SDGTs, and blocked all of their property and interests in property subject to the jurisdiction of the United States. That order also allowed for additional SDGTs to be designated if organizations or persons are found to "act for or on behalf of" or are "owned or controlled by" designated terrorists, or they "assist in, sponsor, or provide . . . support for," or are "otherwise associated" with them. *Id.*

HLF was originally established as the Occupied Land Fund and incorporated as a tax-exempt organization in California in 1989. In 1991 it changed its corporate name to the Holy Land Foundation for Relief and Development and moved to Texas. It describes itself as "the largest Muslim charity in the United States." In December 2001, OFAC, a division of the Department of the Treasury, acting pursuant to the IEEPA and the two Executive Orders (13,224 and 12,947), designated HLF as both an SDT and an SDGT and blocked all of its assets. The designations were based on information

supporting the proposition that HLF was closely linked to Hamas. Soon thereafter, HLF filed a complaint in district court challenging its designations as a terrorist organization and the seizure of its assets, and alleging that its rights under the First, Fourth, and Fifth Amendments, its right to free exercise of religion under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* ("RFRA"), and its rights under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), had all been violated. HLF also filed a motion for a preliminary injunction, seeking to enjoin the government from blocking or freezing its assets. In support of the motion, HLF attached exhibits purportedly showing that it was not linked to Hamas and therefore not a terrorist organization. Subsequently, in May 2002, the OFAC redesignated HLF as an SDT and an SDGT, and filed with the district court an administrative record which included HLF's motion for a preliminary injunction with attached exhibits.

In response to HLF's pleadings, the government moved for summary judgment on the APA claim and to dismiss the remaining claims for failure to state a claim. HLF then filed an opposition to the government's motion, attaching additional exhibits and seeking discovery. The government moved to strike all of HLF's exhibits that were not part of the administrative record and to bar an evidentiary hearing.

The district court conducted a hearing, consisting entirely of oral argument by counsel, on the motions. The court then issued its decision. It granted summary judgment on the HLF's APA claim; dismissed, under Rule 12(b)(6), the remaining claims except for one aspect of the Fourth Amendment claim; and granted the government's motion to strike HLF's exhibits. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57 (D.D.C. 2002).

## II.  The District Court's Opinion

The Holy Land Foundation attempted to supplement the record before the district court by the addition of exhibits attached to its opposition to the defendants' motion to dismiss. The government moved *in limine* to strike the supple-

mental material. The district court granted the government's motion, holding that APA review "must ordinarily be confined to the administrative record." *Id.* at 65 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). The court further rejected HLF's argument that the IEEPA authorizes the blocking of property only where a foreign country or foreign national has a legally enforceable interest in that property, by recognizing that the text of the statute and the cases which have interpreted it impose no restraint on the broad phrase "any interest" and that the Treasury Department's regular interpretation of that term to mean "an interest of any nature whatsoever, direct or indirect" had been repeatedly upheld by the courts. *See Holy Land*, 219 F. Supp. 2d at 67 (citing *Regan v. Wald*, 468 U.S. 222, 224, 225–26, 233–34 (1984)). The court then commenced a detailed review of the administrative record and reiterated the evidence on which the Treasury Department relied in making its determination to designate HLF as an SDGT. *See Holy Land*, 219 F. Supp. 2d at 69–75. It found that the record contained "ample evidence that (1) HLF has had financial connections to Hamas since its creation in 1989; (2) HLF leaders have been actively involved in various meetings with Hamas leaders; (3) HLF funds Hamas-controlled charitable organizations; (4) HLF provides financial support to the orphans and families of Hamas martyrs and prisoners; (5) HLF's Jerusalem office acted on behalf of Hamas; and (6) FBI informants reliably reported that HLF funds Hamas." *Id.* at 69. The court concluded, based on the substantial evidence in the record, Treasury's determination that HLF acts for or on behalf of Hamas was not arbitrary and capricious, and therefore, upheld the agency's reasonable determination.

The court then turned to the remainder of HLF's claims, and dismissed all but one under Federal Rule of Civil Procedure 12(b)(6). First, the court rejected HLF's contention that its due process rights had been violated because the government failed to provide notice and a hearing before its assets were blocked. The court found that postponement of notice and hearing were justified in this case, under factors previously articulated by the Supreme Court. *See id.* at 76–

77 (citing *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679–80 (1974)). The district court also rejected HLF's claim under a substantive due process theory, holding that the designation and blocking were not arbitrary and capricious and "did not rise to the level of a constitutional violation." *See id.* at 77. The court dismissed HLF's constitutional claims finding that the designation and blocking order did not violate the entity's First Amendment right to freedom of association, stating that they "do not prohibit membership in Hamas or endorsement of its views, and therefore do not implicate HLF's associational rights." *Id.* at 81. Additionally, the court found that HLF's freedom of speech First Amendment rights had not been violated because designation and blocking of funds promote the important and substantial governmental interest in combating terrorism by undermining its financial base, and there is no other, narrower means of ensuring that charitable contributions to a terrorist organization are used for a legitimate purpose. *See id.* at 81–82.

Finally, the district court concluded that HLF lacked the ability to invoke its own free exercise rights under the Religious Freedom Restoration Act because it had not alleged it was a religious organization or that it engaged in an "actual exercise of religion" as an organization. *Id.* at 83. Likewise, the court held that HLF lacked standing to invoke the free exercise rights of third parties, such as its donors and employees. *See id.* at 83–84. The court denied the requested preliminary injunction because HLF had failed to demonstrate a substantial likelihood of success on the merits and because injury to the government and the public interest supported the executive's use of designation and blocking as a means to advance the government's foreign policy and national security. *Id.* at 84.

## III. Analysis

We review the district court's dismissal for failure to state a claim under Rule 12(b)(6) *de novo*. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Additionally, the

actions of the Treasury Department in designating HLF as a SDGT are governed by the judicial review provisions of the APA, 5 U.S.C. § 706(2)(A). Therefore, if the OFAC's actions were not arbitrary and capricious, and were based on substantial evidence, we must affirm.

As a first matter, we reject HLF's claim that its designation exceeded Treasury's authority under the APA, and affirm the district court's dismissal of that claim. The district court correctly reviewed the actions of the Treasury Department under the highly deferential "arbitrary and capricious" standard. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). The district court noted that this standard does not allow the courts to undertake their own factfinding, but to review the agency record to determine whether the agency's decision was supported by a rational basis. *See Holy Land*, 219 F. Supp. 2d at 67 (citing *Camp*, 411 U.S. at 142).

As demonstrated by the district court's survey in the opinion below, Treasury's decision to designate HLF as an SDGT was based on ample evidence in a massive administrative record. HLF attacks the reasonableness of this determination by contending that Treasury relied on hearsay evidence to reach its conclusion. This argument is unavailing as it is clear that the government may decide to designate an entity based on a broad range of evidence, including intelligence data and hearsay declarations. *See National Council of Resistance v. Dep't of State*, 251 F.3d 192, 196 (D.C. Cir. 2001) ("NCOR"). HLF also argues that Treasury was arbitrary and capricious in relying on information that predated the 1995 designation of Hamas as a terrorist organization. However, as the district court noted, it was clearly rational for Treasury to consider HLF's genesis and history, which closely connect it with Hamas. *See Holy Land*, 219 F. Supp. 2d at 74. There was no plausible evidence presented which showed that these ties had been severed. The HLF officers and directors who dealt with Hamas until 1995 remained with HLF in their respective capacities until HLF itself was designated. *See id.* There was ample record evidence, in any case, that HLF continued beyond 1995 to maintain its

ties with Hamas and continued to give money to entities controlled by and associated with Hamas. This evidence included the testimony of numerous FBI sources and findings by both Israeli and Palestinian governmental authorities.

Finally, the district court correctly rejected HLF's argument that the IEEPA permits blocking of property only where there is a "legally enforceable" interest to be blocked. *See Holy Land*, 219 F. Supp. 2d at 67. The plain text of the statute belies HLF's contention because it authorizes the blocking of property in which the designated foreign national or country has "any interest." 50 U.S.C. § 1702(a)(1)(B). The language therefore imposes no limit on the scope of the interest, and OFAC has defined this statutory term, pursuant to explicit authorization from Congress, 50 U.S.C. § 1704, to mean, "an interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 500.311–.312. We have upheld Treasury's authority to define these interests. *See Consarc Corp. v. Iraqi Ministry*, 27 F.3d 695, 701 (D.C. Cir. 1994) (Treasury "may choose and apply its own definition of property interests, subject to deferential judicial review."). The Seventh Circuit eloquently dealt with the applicability of the IEEPA to more than traditional "legal interests" in *Global Relief Foundation, Inc. v. O'Neal*, 315 F.3d 748 (7th Cir. 2002). In that case, the Global Relief Foundation, like the HLF in the present case, argued that the word "interest" in § 1702(a)(1)(B) "refer[red] to a *legal* interest, in the way that a trustee is legal owner of the corpus even if someone else enjoys the beneficial interest." *Id.* at 753 (emphasis in original). The *Global Relief Foundation* court rejected that construction as do we, reasoning that "[t]he statute is designed to give the President means to control assets that could be used by enemy aliens." *Id.* That risk is at least as much raised by the prospect of the foreign terrorists holding the beneficial interest, or an interest not defined in traditional common law terms as it is by a legal interest which might be a pure fiction. We find the reasoning of the Seventh Circuit unassailable and join it. The interest need not be a legally protected one in order to be caught within the net of § 1702. In this case, there was ample evidence of foreign "interests" in HLF's

assets. There was evidence demonstrating that HLF operated as a fundraiser for Hamas in the United States and that Hamas officials provided HLF with funds. Therefore, OFAC did not exceed its authority when it blocked the assets after the designation, because OFAC needed only to determine that Hamas had an interest in HLF's property, and the record provided substantial evidence to support that conclusion.

The district court also properly disposed of HLF's due process claims under Rule 12(b)(6). First, OFAC's designation of HLF as an SDGT was not arbitrary and capricious, as demonstrated above. *See Holy Land*, 219 F. Supp. 2d at 77. Nor was the designation in any other way so egregiously unfair as to violate any constraints due process may place upon the substance of the agency's decision. Additionally, HLF was accorded all the administrative process it was due when it was redesignated as an SDGT. Even if Treasury's initial designation arguably violated HLF's due process rights, HLF's funds are blocked currently by a redesignation which Treasury applied in accordance with the requirements we outlined in *NCOR*, 251 F.3d 192.

In *NCOR*, we considered a due process challenge to the Secretary of State's designation of two foreign entities as foreign terrorist organizations under 8 U.S.C. § 1189. A designation under that statute carries a similar implication to those under the Executive Order at issue in this case. In the record before us in *NCOR*, the Secretary of State had afforded the entities neither a predesignation notice nor an opportunity to comment on the evidence against them. We held that the Constitution requires that the Secretary, in designating organizations as foreign terrorist organizations under that statute, must "afford to the entities under consideration [for designation] notice that the designation is impending," except that "[u]pon an adequate showing to the court, the Secretary may provide this notice after the designation where earlier notification would impinge upon the security and other foreign policy goals of the United States." *NCOR*, 251 F.3d at 208. Additionally, the Secretary must "afford to entities considered for imminent designation the

opportunity to present, at least in written form, such evidence as those entities may be able to produce to rebut the administrative record or otherwise negate the proposition that they are foreign terrorist organizations." *Id.* at 209.

In the present case, HLF was initially designated in 2001, in an action taken under the IEEPA-based sanctions program, flowing from a presidentially declared national emergency, as recognized by the district court. *See Holy Land*, 219 F. Supp. 2d at 76–77. However, in April, 2002, Treasury notified both Holy Land and the district court that it was reopening the administrative record and considering whether to redesignate HLF as an SDGT, on the basis of additional evidence linking HLF and Hamas. Holy Land was then given thirty-one days to respond to the redesignation and the new evidence. Holy Land did respond and the Treasury considered its response as well as the new evidence before deciding to redesignate HLF in May 2002. Therefore, Treasury provided HLF with the requisite notice and opportunity for response necessary to satisfy due process requirements. As we stated in *NCOR*, we do not require an agency to provide procedures which approximate a judicial trial, 251 F.3d at 209; therefore, HLF has no right to confront and cross-examine witnesses. Additionally, the notice "need not disclose the classified information to be presented *in camera* and *ex parte* to the court under the statute. This is within the privilege and the prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect." *Id.* at 208–09. The IEEPA expressly authorizes *ex parte* and *in camera* review of classified information in "any judicial review of a determination made under this section [that] was based on classified information." 50 U.S.C. § 1702(c).

We have had recent occasion to consider a claim that the use of classified information disclosed only to the court *ex parte* and *in camera* in the designation of a foreign terrorist organization under the AEDPA was violative of due process. In rejecting that claim, we recalled that "[t]he due process clause requires only that process which is due under the circumstances of the case." *People's Mojahedin Organiza-*

*tion of Iran v. Dep't of State*, ___ F.3d ___ (D. C. Cir. May 9, 2003) (slip op. at 8) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). We further held that the standard set forth in *NCOR* applies not only to the notice provisions governing classification but to the full process of classification and that therefore "due process required the disclosure of *only* the unclassified portions of the administrative record." *Id.* at 7 (emphasis in original). Again, we emphasized the primacy of the Executive in controlling and exercising responsibility over access to classified information, and the Executive's " 'compelling interest' in withholding national security information from unauthorized persons in the course of executive business." *Id.* at 7–8 (citations omitted). That the designation comes under an Executive Order issued under a different statutory scheme makes no difference. HLF's complaint, like that of the Designated Foreign Terrorists Organizations in the earlier cases, that due process prevents its designation based upon classified information to which it has not had access is of no avail.

HLF argues that the government violated its First Amendment rights of freedom of association and freedom of speech and its right to equal protection under the Fourteenth Amendment. HLF argued below that the government had violated its First Amendment rights by prohibiting it from making any humanitarian contributions by blocking its assets. *See, e.g., FEC v. Colorado Republican Federal Campaign Committee*, 533 U.S. 431, 440 (2001) (contributions of money fall within the First Amendment's protection of speech and political association). The district court dismissed these claims pursuant to Rule 12(b)(6), ruling that HLF failed to state a claim because "there is no constitutional right to facilitate terrorism." *Holy Land*, 219 F. Supp. 2d at 81 (quoting *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1133 (9th Cir. 2000)). HLF argues before us now that the district court erred in its disposition of these claims because the court should not have considered evidence beyond those allegations contained in the complaint in order to reach its conclusion and a necessary element in the court's reasoning on all three claims was that the HLF did support Hamas.

On review of a 12(b)(6) motion a court "must treat the complaint's factual allegations as true ... and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation omitted). Additionally, the liberal federal pleading standard requires that complaints need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also Browning*, 292 F.3d at 242. The amended complaint submitted by HLF on which the claims should have been considered, alleged that HLF had no knowing affiliation with Hamas or any other terrorist organization. In order to reach the outcome it did, that there is no constitutional right to fund terrorism, the district court first had to find that the HLF funds terrorism.

We agree with HLF that the district court could not have reached its conclusion without either improperly applying a heightened pleading standard or extending the scope of the 12(b)(6) review. As HLF reminds us, if in considering a motion to dismiss under Rule 12(b)(6) for failure of the complaint to state a claim for relief, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b). HLF argues that that is just what the court did in this case but without converting the proceeding to a Rule 56 proceeding and permitting HLF to either conduct discovery or come forward with additional evidence. It appears that HLF is correct. The district court apparently did consider the administrative record before it, but did not provide the opportunities for the presentation of additional material contemplated by Rule 12(b). This failure to comply with the procedures set forth in the Federal Rules of Civil Procedure constituted an abuse of discretion. Nonetheless, we find this error to be harmless, as HLF suffered no prejudice as a result. *See* 28 U.S.C. § 2111.

HLF could have suffered prejudice only if the failure of the court to convert the proceeding prevented it from coming forward with evidence sufficient to create a substantial question of fact material to the governing issues of the case. Specifically, could HLF have produced evidence upon which a reasonable trier of fact could have found that the designation and the blocking of assets violated its First or Fifth Amendment rights? *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In this case, it could not have. As set forth in other portions of this opinion, the law is established that there is no constitutional right to fund terrorism. The ample record evidence (particularly taking into account the classified information presented to the court *in camera*) establishing HLF's role in the funding of Hamas and of its terrorist activities is incontrovertible. While not in accordance with proper procedures, HLF has had every opportunity to come forward with some showing that that evidence is false or even that its ties to Hamas had been severed. HLF's presentations at the administrative stage did not reach this goal, even when HLF was given an additional thirty-one days to respond to its redesignation and to the new evidence in April of 2002. Even following the district court's judgment, while HLF attempted to supplement the record on appeal, the supplementary material could not have defeated the proposition established by the record evidence that Holy Land was a funder of the terrorist organization Hamas. Perhaps the supplemental evidence offered, while properly rejected from the administrative review claim should have been admitted for the unannounced summary judgment proceeding we now review. But it would have made no difference.

We do not propose that in every case in which a district court improperly goes beyond the pleadings in granting a motion to dismiss without affording the protections contemplated in Rule 12(b), a losing party will lose once more on appeal because of its inability to show what it would have produced had it been given the opportunity. In a general case, perhaps the opportunity for discovery might have produced precisely that which was lacking. However, this is not a general case. This is a specific case involving sensitive

issues of national security and foreign policy. In addition to the classified evidence that we have reviewed, all evidence from the government that is unclassified and otherwise discoverable is in the record before us, as is the evidence HLF produced in an effort to create a genuine factual dispute. Despite the district court's failure to follow the proper procedures, HLF had every opportunity and incentive to produce the evidence sufficient to rebut the ample evidence supporting the necessary conclusion that it was a funder of Hamas but could not do so. Thus, we review an adequate record and conclude that while the district court's conclusion may have been based upon improper procedure, there is no substantial question as to the material facts necessary to support the district court's judgment. Again, we hold as other courts have that there is no First Amendment right nor any other constitutional right to support terrorists, and that the record supports no conclusion that the designation or blocking violated any constitutional right of the HLF. *See, e.g., Humanitarian Law Project*, 205 F.3d at 1133.

## IV. The RFRA Claim

Similar reasoning supports a grant of summary judgment for the government on HLF's claim that the designation and blocking order substantially burden its exercise of religion in violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–1. RFRA bars the government from placing a "substantial[ ] burden" on a person's exercise of religion "even if the burden results from a rule of general applicability," unless the government demonstrates a "compelling governmental interest," and uses the "least restrictive means" of furthering that interest. 42 U.S.C. § 2000bb–1(a), (b). Congress enacted RFRA in 1993 in response to the Supreme Court's decision in *Employment Division, Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). The *Smith* decision had held that "neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling government interest." *City of Boerne v. Flores*, 521 U.S. 507, 514 (1997). In passing RFRA, Congress expressed its purpose as being

"to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb.

Although the *City of Boerne* case held the RFRA unconstitutional as applied to state government action, we have held that without doubt "the portion [of RFRA] applicable to the federal government . . . survived the Supreme Court's decision striking down the statute as applied to the States." *Henderson v. Kennedy*, 265 F.3d 1072, 1073 (D.C. Cir. 2001). That the statute constitutionally applies against the federal government, however, only raises the question: does the present designation with its consequences substantially burden the exercise of religion on the facts before the district court and now before this court? Like the district court, we conclude that it does not.

The district court held that the Foundation could not state a viable RFRA claim on its own behalf because it had "define[d] itself as a 'non-profit charitable corporation' without any reference to its religious character or purpose." *Holy Land*, 219 F. Supp. 2d at 83. Effectively then, the court held that such a corporation is not "a person" within the meaning of 42 U.S.C. § 2000bb-1(c), which provides judicial relief to "a person whose religious exercise has been burdened in violation" of RFRA. That may be, but we do not so decide today. We decide only that even if it is such a person, its religious exercise has not been burdened in violation of the statute. Congress in enacting RFRA only sought to provide process and standards for the protection of religious exercise. It did not purport to extend the definition of that term, and indeed defined the term "exercise of religion" only as meaning "the exercise of religion under the First Amendment to the Constitution." 42 U.S.C. § 2000bb–2(4). Even accepting the dubious proposition that a charitable corporation not otherwise defined can exercise religion as protected in the First Amendment, preventing such a corporation from aiding terrorists does not violate any right contemplated in the Constitution or the RFRA. No one on behalf of Holy Land

Foundation has forwarded the proposition that the fomenting and spread of terrorism is mandated by the religion of Islam. At most they argue a right to charitable giving as a pillar of that religion. *Cf. Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) (holding that a general religious mandate "to spread the gospel by 'all available means' " does not provide RFRA protection to the sale of T-shirts). Acting against the funding of terrorism does not violate the free exercise rights protected by RFRA and the First Amendment. There is no free exercise right to fund terrorists. The record clearly supports a conclusion that HLF did. There is no evidence that Congress intended to create such a right within the RFRA. Therefore, HLF's activities do not fall within the RFRA's protection, and based on the evidence already in the record, summary judgment for the government is warranted.

## V. Conclusion

Therefore, we uphold the district court's affirmance of the Treasury Department's decision to designate HLF as an SDGT and to block its assets. We also affirm the district court's dismissal of HLF's due process claims. Although we hold that the district court erred in not converting the government's 12(b)(6) motion for dismissal to a motion for summary judgment, we find that error to be harmless because the government should have been granted summary judgment, as we hereby do, on the basis of the administrative record.