# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 21-5157

September Term, 2021

FILED ON: MARCH 29, 2022

OLEG DERIPASKA,
> APPELLANT

v.

JANET L. YELLEN, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES
DEPARTMENT OF THE TREASURY, ET AL.,
> APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00727)

Before: MILLETT, PILLARD and KATSAS, *Circuit Judges*

## **J U D G M E N T**

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the following reasons, it is

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED.**

Oleg Deripaska, a politically influential Russian billionaire, appeals a district court judgment dismissing his claims that the Office of Foreign Assets Control (OFAC) unlawfully placed him under sanction in 2018. App. 275-308. OFAC imposed those sanctions under a set of executive orders President Obama issued in 2014 in response to Russia's deployment of military force to, and then purported annexation of, the Crimea region of Ukraine. The President's authority is spelled out in the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 *et seq.*, authorizing declarations of emergencies regarding foreign threats and the imposition of sanctions on persons and states in response to those emergencies. The two Ukraine-related orders at issue—both titled "Blocking Property of Additional Persons Contributing to the Situation in Ukraine"—are E.O. 13661, which authorizes sanctions against persons determined to

have acted on behalf of senior Russian officials (App. 127-29), and E.O. 13662, which authorizes sanctions against persons acting in specified sectors of the Russian economy, including the energy sector (App. 130-32).

Deripaska does not challenge Executive Orders 13661 and 13662 but makes three arguments that the sanctions imposed on him were unlawful. None has merit, and we affirm the district court.

*First*, Deripaska argues that the sanctions exceed OFAC's statutory authority because, he says, they respond not to the threat Russia poses to Ukraine but to a generalized "undeclared national emergency" concerning Russia's "worldwide malign activities." Appellant Br. at 28 (formatting in second quotation altered); *see generally* Appellant Br. at 25-37. Deripaska's only support for that contention is OFAC's April 6, 2018, press release announcing sanctions against him and numerous other actors. App. 239-46. He reads that press release to imply that an undeclared emergency concerning perceived Russian malign activities broader than the Ukraine crisis "may have motivated the agency to undertake the action." Appellant Br. at 29; *see also* Appellant Br. at 30-31. And he asserts that none of his conduct cited in support of the sanctions relates to Russian activities regarding Ukraine. Appellant Br. at 18-19.

This challenge fails for two reasons, as the district court correctly held. *See* App. 285-86. First, it is OFAC's evidentiary submission and not its press release that provides the basis for the sanctions. Deripaska seems to suggest that the press release shows that OFAC's official documentation of the sanctions, *see* App. 118-23, 152-60, was a pretext for other, invalid motivations. But nothing about the press release displaces the usual rule that "a court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons" or motivations, including those stated only after the agency's decision. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019).

Second, the press release appropriately reflects how the executive orders apply to Deripaska by summarizing the extensive justifications OFAC gave in its evidentiary memoranda. Here is what the press release says about Deripaska:

> Oleg Deripaska is being designated pursuant to E.O. 13661 for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation, as well as pursuant to E.O. 13662 for operating in the energy sector of the Russian Federation economy. Deripaska has said that he does not separate himself from the Russian state. He has also acknowledged possessing a Russian diplomatic passport, and claims to have represented the Russian government in other countries. Deripaska has been investigated for money laundering, and has been accused of threatening the lives of

2

business rivals, illegally wiretapping a government official, and taking part in extortion and racketeering. There are also allegations that Deripaska bribed a government official, ordered the murder of a businessman, and had links to a Russian organized crime group.

App. 240. That the press release also places Deripaska's conduct in the context of Russia's other global malign activities does not contradict the basis of the sanctions. The same press release announced sanctions on dozens of persons and entities, some pursuant to the two executive orders at issue in this case, and some pursuant to Executive Order 13582 targeting transactions beneficial to the Syrian government. App. 239. In total, the press release announced sanctions across seven Russian individuals, seventeen Russian government officials, twelve Russian companies, and two state-owned Russian firms. App. 239-46. Its reference to Russia's "worldwide malign activities" is not, as Deripaska would have it, a reference to any distinct, "undeclared" emergency, but a catch-all for the spate of announced sanctions across two geopolitical crises. Nothing about the more encompassing references in the press release contradicts or belies the far more specific reasons OFAC gave in its evidentiary memos for sanctioning Deripaska.

In short, there is no evidence that the government acted for reasons other than those it provided, much less that its stated reasons were contrived. *See Dep't of Commerce*, 139 S. Ct. at 2575-76. And, contrary to Deripaska's suggestions, *see* Appellant Br. at 20, 29-32, neither executive order requires a showing of how the particular sanction bears on the declared emergency; rather, the orders reflect the President's judgment that the covered actions contribute to the situation in Ukraine. The two cited executive orders plainly cover the types of actions OFAC attributes to Deripaska.

*Second*, Deripaska argues OFAC acted arbitrarily and capriciously by sanctioning him under E.O. 13661. He contends in particular that OFAC lacked authority to sanction him for conduct that predated the E.O.'s effective date. *See* Appellant Br. at 38-49. But we need not consider questions of the retroactive reach of the IEEPA and E.O. 13661 because the evidence of Deripaska's post-order conduct suffices to support the sanctions. OFAC cites substantial evidence that Deripaska acted on behalf of Russian officials after the President issued E.O. 13661 in 2014. *See* App. 108 (noting that, in the years following the President's E.O., Deripaska laundered money on behalf of President Putin). To the extent there is any ambiguity in the unclassified record regarding the timing of Deripaska's sanctioned conduct, *see* Reply Br. at 15, our review of the classified record confirms that OFAC had sufficient evidence for sanctions based on Deripaska's conduct that post-dated E.O. 13661.

Indeed, we can fairly read OFAC's submissions as describing a long-running pattern of behavior which continued after the executive order issued. Especially in the absence of any evidence that the behavior had ceased, OFAC may rely on past conduct in describing an enduring

course of conduct persisting until the sanctions are imposed. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003) (holding government could sanction private foundation based partly on evidence tying foundation to terrorist organization before the organization's terrorist designation, because "[t]here was no plausible evidence presented which showed that these ties had been severed"); *see also* Appellee Br. at 32 n.2, 33. The evidence of Deripaska's post-order activities suffices to support the sanctions, and Deripaska makes no objection specifically to contextualizing that evidence by reference to pre-order conduct. Even were he correct that the government could not sanction him for pre-order conduct alone, that is not what happened here.

*Third*, Deripaska argues OFAC acted arbitrarily and capriciously by sanctioning him but not his energy companies under E.O. 13662. Specifically, Deripaska claims that OFAC chose to lift sanctions from two major Russian energy companies—En+ and EuroSibEnergo—on the basis that Deripaska no longer "own[ed]" them, even as it maintains that Deripaska continues to "operate" in Russia's energy sector. *See* Appellant Br. at 49-58. Seeing a contradiction, Deripaska argues he cannot be operating in the energy sector both because he no longer owns those energy companies, retaining only non-controlling stakes, and because the companies are themselves no longer subject to OFAC sanctions. *See* Appellant Br. at 56. But the district court correctly held that "[o]wnership and operation are two distinct concepts, with the latter conveying a far broader scope of conduct." App. 294. In fact, the record reflects Deripaska's continuing and extensive operation in the sector: OFAC found, among other things, that Deripaska "owns 44.95 percent of En+, votes 35 percent of En+ shares, and appoints four of 12 board members to the En+ board of directors," thereby verifying his substantial operation in the sector. App. 157; *see* App. 155-58. And that OFAC may list and delist energy companies at its discretion to further the President's geopolitical goals does not mean that a delisted company no longer "operates" in the energy sector, nor does it change the facts of Deripaska's ongoing role in those energy companies. *See* Appellee Br. 49-52.

OFAC further found that Deripaska operated in the Russian energy sector by representing the Russian state and Russian energy companies at energy conferences and on international councils—roles which both count as operation in the sector and confirm that Deripaska's somewhat diminished roles in En+ and EuroSibEnergo contributed to such operation. *See, e.g.*, App. 155 (finding these activities "constitute operation in the energy sector of the Russian Federation economy" sufficient for sanctions). Deripaska does not dispute his substantial international role representing Russia and its energy industry, which is an independently sufficient basis supporting OFAC's sanction under E.O. 13662. Deripaska also briefly raises in his Reply Brief an argument that the Russian energy sector does not encompass electricity production, Reply Br. at 31 n.2; he did not raise that argument in his opening brief, and it is accordingly forfeited.

4

For those reasons we affirm the district court's judgment.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

*So ordered.*

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk

5