# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 13, 2006          Decided December 15, 2006

No. 05-5330

VENITA COLBERT,
APPELLANT

v.

JOHN E. POTTER, POSTMASTER GENERAL
UNITED STATES POSTAL SERVICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 04cv00996)

*Judith L. Walter* argued the cause and filed the briefs for appellant.

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Michael J. Ryan*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

Concurring opinion filed by *Circuit Judge* SENTELLE.

EDWARDS, *Senior Circuit Judge*: Appellant Venita Colbert seeks review of the District Court's dismissal of her complaint against appellee John E. Potter in his official capacity as Postmaster General of the United States Postal Service ("USPS"). The complaint alleges that appellant's supervisor discriminated against her on the basis of her race, sex, age, and disability and also improperly retaliated against her for initiating a discrimination complaint, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (2000), the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (2000), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796*l* (2000).

Under Title VII, USPS employees are required to file lawsuits seeking relief for employment discrimination within 90 days of receipt of notice of final administrative action. 42 U.S.C. § 2000e-16(c). Equal Employment Opportunity Commission ("EEOC") regulations also require a claimant "under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court . . . [w]ithin 90 days of receipt of the final action on an individual or class complaint." 29 C.F.R. § 1614.407(a) (2006). There is no dispute here that appellant's counsel received a copy of USPS's Final Agency Decision ("Final Decision") against Colbert. Nor do the parties dispute the filing date of appellant's complaint. The question at issue here concerns the date when appellant received notice of the Final Decision denying her administrative claims. The District Court, relying on the date stamped on the back of a USPS Form 3811 (the "Domestic Return Receipt"), found that "the name and signature of Colbert's counsel clearly appears, just above a postmark of 'Mar 18 2004.'" *Colbert v. Potter*, Civ. A. No. 04-996, 2005 WL 3273571, at *4 (D.D.C.

July 28, 2005).  On the basis of this evidence, the District Court agreed with USPS "that Colbert's counsel received the Final Agency Decision on March 18, 2004 – 92 days before Colbert filed suit, which would render her action untimely."  *Id.*

Before both the District Court and this court, appellant "challenges the March 18, 2004 postmark on the return receipt card, arguing that 'the postmark showing the date of mailing would appear on the reverse side of the card in the area where the postage is to be affixed,' and that because USPS 'has not provided an image of the reverse side of the card,' it should be presumed that the reverse of the card bears a postmark with a later date."  *Id.* (quoting Plaintiff's Memorandum of Points and Authorities in Support of Opposition ("Opposition Memorandum"), *reprinted in* App. 53-73).  The District Court rejected this argument, noting that appellant "neither dispute[d] that the return receipt card bears her attorney's signature nor challenge[d] the legitimacy of the postmark on the card."  *Id.*  Because appellant offered no "affidavit or other evidence that would contravene the return receipt postmark," the District Court granted USPS's motion to dismiss or in the alternative for summary judgment.  *Id.*

Following oral argument before this court, USPS filed a motion, pursuant to Federal Rule of Appellate Procedure 10(e)(2)(C), for leave to submit a complete copy of the Domestic Return Receipt.  On the same day, on its own motion, the court directed USPS to submit a copy of the front half of the Domestic Return Receipt.  Appellant then filed a response to USPS's submission, after which the court ordered USPS to file the original Domestic Return Receipt.  Upon examination, the front half of the receipt positively confirms that appellant's counsel received USPS's Final Decision on or before March 18, 2004, making this action untimely.  Accordingly, we affirm the judgment of the District Court.

## I. BACKGROUND

The background facts in this case are carefully set forth in the District Court's unpublished Memorandum Opinion. Because there is nothing to add to the District Court's statement, we have incorporated it as a part of our Background section:

Colbert is an African-American woman over 40 years old who suffers from degenerative disk disease, "a painful back ailment which is aggravated by certain types of physical activity." Compl. ¶ 5. She began her employment with the United States Postal Service on June 10, 1985. By 1992, Colbert had been promoted to Supervisor of the Telephone Operators, at an EAS-15 grade and pay level, within USPS' national headquarters at L'Enfant Plaza in Washington, D.C. *Id*. ¶ 7. In this position, she received favorable performance reviews, promotions and increases in pay until 1995. *Id*. ¶ 8. In 1994, USPS hired Billy Wesson as Manger of Headquarters Facility Services. His responsibilities included telephone operations, placing Colbert under his supervision. *Id*. ¶ 9. Shortly after Wesson arrived, Colbert allegedly began experiencing discriminatory treatment at his hands.

According to Colbert, Wesson "favored and handed out promotional opportunities to males, who like himself, had a military background," while treating Colbert and other African-American women under his management unfavorably. *Id*. ¶ 11. Colbert further alleges that Wesson was hypercritical of her work, consistently made demeaning comments, questioned her use of leave, praised others but not her for good performance, and imposed conditions on her that were not imposed on other employees. *Id*. ¶ 12.

Colbert perceived that Wesson was either trying to harass her into resigning or setting her up for termination, so she began to explore opportunities to be "detailed" to

other departments at USPS headquarters. *Id*. ¶ 14. When Colbert discussed her desire for a work detail and its associated promotional and training opportunities with Wesson, he responded that "he could demote her to a custodial position on the night shift" at a lower grade and pay level. *Id*. ¶ 15. Colbert persisted in her efforts, and in early 1998 she found a detail to the Employment Development office as a training development specialist. Colbert needed to get Wesson's approval in order to take the detail. Wesson, however, bristled at this idea, and ordered Colbert not to contact the manager in Employee Development. A few days later, on April 7, 1998, Wesson gave Colbert a "developmental assignment" to the mail room as "Supervisor, Mail Messenger," telling Colbert that she would have to take this assignment before she could be considered for the Employee Development detail. At the same time as he assigned Colbert to the mail room, Wesson appointed four African-American men, younger than Colbert and with military backgrounds, to "higher positions at higher pay levels." *Id*. ¶¶ 16-20.

After completing the mail room assignment, mostly consisting of physical labor which aggravated her degenerative disk disease, Colbert obtained her detail to Employee Development in August 1998. She received higher pay at the EAS-21 level, and acquired job duties in line with her education, experience, and desires. Wesson, however, interfered with Colbert's prospects for permanent employment with Employee Development, and in February 1999 demanded that she return to his department. *Id*. ¶¶ 22-23. Upon Colbert's return, Wesson immediately sent her out on a detail to the purchasing department, recalled her once more, and then assigned her to work in Operating Services, "the manual labor-custodial-maintenance section of Headquarters Facility Services." *Id*. ¶¶ 23-25. Colbert's responsibilities there included restocking first aid kits and

cleaning supplies, taking walking tours of the building, and checking the expiration date on fire extinguishers. *Id*. ¶¶ 26-27. Once again, the job involved physical exertion which inflamed Colbert's back condition. This shuffling of work assignments was "designed and intended . . . to harass her into quitting," *id*. ¶ 28, and effectively "divested [Colbert] of her supervisory responsibilities," *id*. ¶ 24.

During July and August 1999, Weston subjected Colbert to a higher level of scrutiny and discipline than he applied to her co-workers, and which "had no basis in official Postal Service personnel policies." *Id*. ¶ 29. Wesson obtained Colbert's work telephone records and accused her of making excessive personal calls while on the job. For this offense, on September 3, 1999 Wesson issued Colbert a proposed Letter of Warning in lieu of a seven day time off suspension. *Id*. ¶¶ 29-33. When Colbert appealed this disciplinary action on September 15, 1999, Wesson "became angry and loud," *id*. ¶ 33. On September 23, 1999 he sustained the Letter of Warning and threatened Colbert with further discipline if she "continued to use Postal property for personal reasons." *Id*. ¶ 34.

On September 7, 1999, Colbert initiated precomplaint counseling with the Postal Service's [Equal Employment Opportunity ("EEO")] office. *Id*. ¶¶ 35. When the EEO counselor sent questions to Wesson as part of the investigation into Colbert's filing, Wesson called Colbert into his office and handed her a memorandum stating that she was now assigned to the position of Purchasing Assistant. *Id*. ¶ 36. The effect of this "retaliatory" reassignment was to deprive Colbert of the supervisory duties of her previous job and "the benefits that inure to such positions." *Id*. ¶¶ 37-38. On November 5, 1999, Colbert initiated a second round of precomplaint counseling for her forced move to the Purchasing Department. On

November 16, 1999, USPS' EEO office notified Colbert of "the unsuccessful results of the precomplaint counseling process" and advised her that she could file a formal complaint. Colbert did so on December 22, 1999, raising both her initial discrimination complaint and her subsequent charge of retaliation. The Postal Service issued its Final Agency Decision, denying Colbert's claims, in March 2004, and notified her of her right to seek judicial review in federal district court. *Id.* ¶ 39.

*Colbert*, 2005 WL 3273571, at *1-2.

On June 18, 2004 appellant filed a lawsuit in the District Court. USPS responded with a Motion to Dismiss or, in the Alternative, for Summary Judgment, arguing that appellant's claims should be dismissed for failure to state a claim for which relief could be granted. In a memorandum supporting its motion, USPS argued that appellant had failed to exhaust her administrative remedies before filing suit in District Court, failed to timely file her complaints with the USPS EEO office, failed to allege facts sufficient to make out a prima facie case of discrimination and, most relevant to this appeal, failed to file a timely complaint in the District Court. USPS attached to the memorandum a black-and-white copy of the back half of a Domestic Return Receipt that was sent with the Final Decision to elicit confirmation from appellant that she had received a copy of the Final Decision. The copy of the receipt showed the printed name and signature of Judith L. Walter, appellant's attorney, and the imprint of a round stamp with the words "USPS . . . Silver Spring . . . Takoma Park" and "Mar 18 2004." On the basis of this evidence, USPS argued to the District Court that "Colbert's counsel received the Final Agency Decision on March 18, 2004 – 92 days before Colbert filed suit, which would render her action untimely." *Id.* at *4.

Appellant responded with the Opposition Memorandum, in which she argued that a grant of summary judgment would be

premature and improper, because numerous material facts were in dispute. Appellant claimed further that she received USPS's Final Decision, through her attorney, on March 20, 2004, not on March 18, 2004, and, therefore, that her lawsuit was timely filed. In support of this claim, appellant submitted a copy of the Final Decision date stamped "Received – Mar 20 2004." No affidavit accompanied this submission. Rather, appellant merely claimed that her attorney, "[p]er her practice," stamped the date on the first page of the document upon receiving USPS's Final Decision. App. 64. Appellant also challenged the significance of the date stamp imprint on the copy of the reverse side of the Domestic Return Receipt proffered by USPS, arguing that a date stamp imprint "showing the date of mailing would appear on the [front side] of the card in the area where the postage is to be affixed." *Id.* at 65.

The District Court, having considered materials outside of the pleadings, treated USPS's motion as one for summary judgment, in accordance with Federal Rule of Civil Procedure 12(b). *Colbert*, 2005 WL 3273571, at *3. The parties did not dispute that the Final Decision was issued in March 2004 and that appellant received a copy of the decision that month. The only question at issue before the District Court was the precise date in March when appellant's counsel received the Final Decision. The District Court concluded that there were no material facts in dispute concerning this question and that the evidence before the court made it clear that appellant had received the Final Decision on March 18, 2004. In rejecting appellant's claims, the District Court said:

> Colbert challenges the March 18, 2004 postmark on the return receipt card, arguing that the postmark showing the date of mailing would appear on the reverse side of the card in the area where the postage is to be affixed, and that because USPS has not provided an image of the reverse

side of the card, it should be presumed that the reverse of the card bears a postmark with a later date.

Colbert's argument is unpersuasive. She neither disputes that the return receipt card bears her attorney's signature nor challenges the legitimacy of the postmark on the card. Instead, she relies only on her attorney's practice of date-stamping mail upon receipt to support her assertion that the complaint is timely. In the absence of any affidavit or other evidence that would contravene the return receipt postmark, the court deems Colbert's counsel to have received the Final Agency Decision on March 18, 2004, making this action untimely. Colbert presents no argument to support equitable tolling of the 90-day statute of limitations, so her complaint must be dismissed.

*Id.* at *4 (footnote and internal quotation marks omitted). The District Court accordingly granted summary judgment in favor of USPS and dismissed appellant's complaint as untimely. Appellant then filed a timely notice of appeal.

During the course of oral argument before this court, USPS's counsel was asked why appellee had neglected to submit a copy of the front half of the Domestic Return Receipt in support of its motion for summary judgment. Counsel responded, without explanation, that "time constraints" prevented USPS from filing both sides of the Domestic Return Receipt. Recording of Oral Argument at 12:59. On October 13, 2006, following oral argument, USPS filed a motion, pursuant to Federal Rule of Appellate Procedure 10(e)(2)(C), for leave to file a complete copy of the Domestic Return Receipt. On the same day, on its own motion, the court directed USPS to submit a copy of the front half of the Domestic Return Receipt, and to furnish appellant's counsel with a copy of same. *Colbert v. Potter*, No. 05-5330 (D.C. Cir. Oct. 13, 2006). On October 27, 2006, pursuant to an order of the court allowing a reply, appellant filed a response to USPS's submission.

Appellant's Response to Appellee's Post-Argument Submission, *Colbert v. Potter*, No. 05-5330 (D.C. Cir. filed Oct. 27, 2006). In her response, appellant noted that "the original of the return receipt ha[d] never been provided." *Id.* at 3. On October 31, again on its own motion, the court ordered USPS to submit "the original Return Receipt form at issue in this case." *Colbert v. Potter*, No. 05-5330 (D.C. Cir. Oct. 31, 2006). On November 1, 2006, USPS filed the original Form 3811 Domestic Return Receipt. Review of the original Domestic Return Receipt reveals that the front side of the form bears a cancellation postmark. This cancellation postmark, like the date stamp imprint appearing on the reverse of the form, bears the date "18 Mar 2004."

## II. ANALYSIS

### A. *Standard of Review*

We review the District Court's grant of summary judgment *de novo. See DynaQuest Corp. v. U.S. Postal Serv.*, 12 F.3d 1144, 1146 (D.C. Cir. 1994). Summary judgment is warranted only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[S]ubstantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

If, in considering a motion to dismiss for failure of the complaint to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material

made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b).  We review a district court's alleged failure to comply with these requirements of Rule 12(b) for an abuse of discretion. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).  However, if the District Court errs in applying the requirements of Rule 12(b), we will not reverse if the complaining party has suffered no prejudice and the error is determined to be harmless.  *Id*. at 165-66.

**B.  *Appellant's Complaint Was Not Timely Filed in District Court***

The dispute in this case is straightforward and simple.  If appellant received USPS's Final Decision on March 20, 2004, as she contends, her complaint is timely.  If, on the other hand, as USPS claims and the District Court found, appellant received the Final Decision on March 18, 2004, then her complaint is untimely.

"[A] statute of limitations defense under Title VII is an affirmative defense." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 577 (D.C. Cir. 1998).  Therefore, USPS "bears the burden of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  In support of its motion to dismiss or for summary judgment, USPS submitted a photocopy of the back half of the Domestic Return Receipt, bearing the printed name and signature of appellant's attorney and stamped "Mar 18 2004."  App. 51.  Appellant does not dispute the authenticity of the name and signature on the Domestic Return Receipt.  Rather, raising the same arguments that she raised before the District Court, appellant claims that the date stamp imprint relied upon by USPS establishes neither the date on which she received the Final Decision nor the date that the Domestic Return Receipt was mailed back to the USPS EEO office.  Appellant argues both that the document "does not have any date of delivery indicated in [the] space where the date is to be inserted," Appellant's Br. at 7, and that, per USPS mailing

standards, the postmark indicating the date that the return receipt was mailed appears on the front of a Domestic Return Receipt, not the reverse, *id.* at 8-9. The District Court rejected appellant's arguments, because she "neither dispute[d] that the return receipt card bears her attorney's signature nor challenge[d] the legitimacy of the postmark on the card." *Colbert*, 2005 WL 3273571, at *4.

It is hard to fathom why USPS failed to submit the *original* Domestic Return Receipt, *with both the front and back sides of the form showing*, in support of its motion before the District Court. This would have avoided any confusion over precisely when appellant's counsel received USPS's Final Decision. Counsel's explanation to this court – that "time constraints" prevented USPS from filing both sides of the Domestic Return Receipt – did little to address the questions raised by appellant. After argument, however, USPS moved to supplement the record pursuant to Federal Rule of Appellate Procedure 10(e)(2)(C), seeking leave to file a complete copy of the Domestic Return Receipt. Without addressing this motion, the court, on its own motion, ordered USPS to submit the original Domestic Return Receipt.

Appellate courts do not ordinarily consider evidence not contained in the record developed at trial. *In re AOV Indus., Inc.*, 797 F.2d 1004, 1012 (D.C. Cir. 1986) (citing *Singleton v. Wulff*, 428 U.S. 106 (1976)). "It is within the discretion of the court of appeals, however, to make limited exceptions to this rule when 'injustice might otherwise result.'" *Id.* (quoting *Singleton*, 428 U.S. at 121). *See also CSX Transp., Inc. v. Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000) ("[Courts of appeals] have the inherent equitable power to allow supplementation of the appellate record if it is in the interests of justice."). In this case, appellant (1) clearly challenged the sufficiency and significance of USPS's evidence in the trial court, and (2) made a compelling argument that dispositive

evidence appeared on the front side of the Domestic Return Receipt, which was in the possession and control of USPS. Appellant's concerns were well-founded. Therefore, we concluded that, as the entire Domestic Return Receipt "go[es] to the heart of the contested issue, it would be inconsistent with this court's own equitable obligations . . . to pretend that [it does] not exist." *In re AOV Indus., Inc.*, 797 F.2d at 1013.

There is no real dispute between the parties over the fact that "acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues." *CSX Transp., Inc.*, 235 F.3d at 1330. Indeed, after oral argument before this court, in response to appellant's concerns, USPS moved to submit the Domestic Return Receipt for review by this court. We agreed with the parties that the record should be supplemented to include the original receipt and therefore ordered USPS to file the original Domestic Return Receipt with the court.

Normally, supplementation of the record is effected by remanding the case to the District Court to allow that court to order the introduction of new evidence. *See, e.g.*, *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) ("[I]t makes sense to remand so that the District Court–which is already familiar with the record in this case–can supplement the record and make factual findings in the first instance on appellants' claims."). Certainly, we could have remanded this case to the District Court with instructions to obtain and review the front side of the original Domestic Return Receipt. However, remand for such a ministerial task, which this court easily can perform itself, would serve no good purpose and would ultimately amount to a waste of judicial resources. *See Dickerson v. Alabama*, 667 F.2d 1364, 1367 (11th Cir. 1982) ("[A] decision to remand this case for the sole purpose of allowing the district court to review the several additional significant facts contained in the transcript would be contrary to

both the interests of justice and the efficient use of judicial resources.").

It is also worth noting that this is not a situation in which a party that failed to offer evidence is relieved from the consequences of its neglect. Even assuming that USPS was neglectful, the worst consequence of that neglect would have been a remand to the District Court that necessarily would have led to the result we reach here.

Our review of the original Domestic Return Receipt reveals that the front side of the form does in fact bear a cancellation postmark in the area where the postage is affixed. This cancellation postmark, like the date stamp imprint appearing on the reverse side of the receipt, bears the date March 18, 2004. The receipt offers conclusive evidence that appellant's attorney signed the domestic return receipt no later than March 18, 2004. And appellant does not challenge the authenticity of the original receipt.

Appellant proffered a copy of the Final Decision bearing the imprint "Received – Mar 20 2004," suggesting that this is the date when counsel received USPS's decision. This proffer was attached to the Opposition Memorandum, but with no accompanying affidavit. Appellant offered nothing else, save argument, to support her claim that the Final Decision was received on March 20, 2004. This was not enough to create a genuine issue of material fact sufficient to avoid summary judgment. Appellant correctly reminds us that, on review of summary judgment, we must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)). However, even in the most favorable light, it would be patently unreasonable for this court to infer that appellant's attorney received the Final Decision on March 20, 2004, when the Domestic Return Receipt

document, *indisputably associated with the Final Decision and bearing the attorney's signature*, was mailed back to the USPS EEO office on March 18, 2004. Counsel submitted no affidavit to suggest otherwise.

The filing time limit imposed by Title VII, 42 U.S.C. § 2000e-16(c), "is not a jurisdictional requirement but rather is similar to a statute of limitations." *In re James*, 444 F.3d 643, 647 (D.C. Cir. 2006) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (recognizing that Title VII's jurisdictional statutes do not limit jurisdiction to timely filed complaints). Therefore, "like a statute of limitations, [the statutory time requirement] is subject to waiver, estoppel, and equitable tolling." *Zipes*, 455 U.S. at 393. "'Federal courts have typically extended equitable relief only sparingly,'" *Commc'ns Vending Corp. of Ariz. v. FCC*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (quoting *Irwin*, 498 U.S. at 96), and appellant has articulated no sound reason for this court to consider equitable tolling of the 90-day filing time limit. Indeed, in her brief, appellant merely says that "[t]he ninety-day limitation period for filing suit under Title VII is subject to equitable tolling, however, as Ms. Colbert filed her suit ninety days after her attorney received the notice of right to sue embodied in the [Final Decision], there is no argument available to her for equitable tolling in this case." Appellant's Br. at 13. Appellant does not suggest that there are grounds for equitable tolling in the current posture of the case, *i.e.*, with the court's rejection of her claim that her suit was timely filed. And we can discern no grounds.

In light of the foregoing considerations and on the basis of the record before us, we conclude that appellant received the Final Decision no later than March 18, 2004 and that her complaint, filed at least 92 days following receipt of the Final Decision, was untimely.

### C. *The District Court's Treatment of USPS's Motion As One for Summary Judgment Does Not Constitute Reversible Error*

Rule 12(b) provides:

> If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED. R. CIV. P. 12(b). Appellant contends that the District Court erred when it converted USPS's motion to dismiss into a motion for summary judgment without first allowing her reasonable time to present evidence in opposition to the alternative motion. Appellant's Reply Br. at 7. USPS responds that, because its motion was filed in the alternative (as a "Motion To Dismiss or, in the Alternative, for Summary Judgment") and USPS asked the District Court to dispose of the case pursuant to summary judgment, appellant had adequate notice and could have presented evidence in opposition to the motion for summary judgment. Appellee's Br. at 16-17. USPS has the better of this disagreement.

We have previously held that a trial court abuses its discretion when it "fail[s] to comply with the procedures set forth in the Federal Rules of Civil Procedure" by considering materials outside of the pleadings "without converting the proceeding to a Rule 56 proceeding and permitting [the nonmoving party] to either conduct discovery or come forward with additional evidence." *Holy Land Found.*, 333 F.3d at 165. We find no such error here. Appellant had notice that USPS's motion was, at least potentially, one for summary judgment. The fact that she proffered her copy of the Final Decision

bearing a date stamp affixed by her attorney makes clear that she had been afforded a reasonable opportunity to present pertinent evidence as required by Rule 12(b). Had appellant needed time to gather more supporting evidence, she could have moved, under Federal Rule of Civil Procedure 56(f), for the trial court to defer its ruling on summary judgment and allow her additional time to take discovery. *See Smith-Haynie*, 155 F.3d at 579.

Even assuming, *arguendo*, that the District Court abused its discretion in failing to allow appellant a reasonable opportunity to present pertinent material to refute USPS's claim that the complaint was untimely, the error would be harmless. *Holy Land Found.*, 333 F.3d at 165 (holding that when the failure results in no prejudice to the nonmoving party, "we find [that] error to be harmless."). When a nonmoving party could not have produced any "evidence sufficient to create a substantial question of fact material to the governing issues of the case," *id.*, we have no basis upon which to reverse the judgment of the District Court. That is the situation here.

In her Response to Appellee's Post-Argument Submission, appellant acknowledges that, "[n]ormally the Postal Service is a neutral actor in producing and providing . . . [a] document [like the Domestic Return Receipt]." Appellant's Response to Appellee's Post-Argument Submission at 3. And then, with commendable candor and forthrightness, the submission adds:

> Appellant's counsel is not accusing Appellee or its counsel of fraudulently manipulating the images of the domestic return receipt. Nor is it suggested that it is impossible for Appellant's counsel to have made a mistake with regard to the date she received the [Final Decision]. If Appellant's counsel did make a mistake, however, she would accept that and move on if it could be proven conclusively.

*Id*. at 3. Appellant's principal concern in this case has been that the original Domestic Return Receipt had never been produced. That concern was addressed when this court ordered USPS to file the original receipt. And, upon review of the original Domestic Return Receipt, it has been proven conclusively that appellant received USPS's Final Decision on or before March 18, 2004.

We have no reason to suspect that the original Domestic Return Receipt submitted by USPS is anything other than genuine. Absent fraud, appellant can produce no evidence to controvert the fact that a Domestic Return Receipt bearing the signature of appellant's attorney was mailed to the USPS EEO office on March 18, 2004. Thus, if any error was committed by the District Court in converting USPS's motion to dismiss to a motion for summary judgment, it was harmless.

### III. CONCLUSION

For the reasons given above, the District Court's grant of summary judgment in favor of USPS is hereby affirmed.

*So ordered*.

SENTELLE, *Circuit Judge, concurring*: I concur in the majority's disposition and in most of the opinion which supports it. I write separately only because I cannot join in that portion of the opinion based on evidence not before the district court. I do not think it was necessary or appropriate to accept the evidence on appeal. The district court record included a copy of the date-stamped Domestic Return Receipt, unrebutted by any evidence or affidavit. The district court properly granted summary judgment on the record evidence.

It is not the role of appellate courts to accept new evidence. In stepping into that role, the majority relies on *In re AOV Industries, Inc.*, 797 F.2d 1004 (D.C. Cir. 1986). That case involved extraordinary circumstances. Specifically, while the case was on appeal, the appellant produced newly-discovered evidence of a conflict of interest. As the case involved a fee determination in a bankruptcy, the court, mindful that a fee determination affects all creditors and is equitable in nature, remanded the case for additional consideration. *Id.* at 1012-13. Even in those unusual circumstances, one judge disagreed with the panel majority. *Id.* at 1014-15 (Starr, J., dissenting in part). And on the facts in this case, I would follow Judge Starr's recommendation: "This court should not carve out an exception to the general rule that an appellate court cannot receive new evidence from the parties." *Id.* at 1015. I would further note that *Singleton v. Wulff*, 428 U.S. 106, 121 (1976), relied upon by the majority in *AOV Industries*, is not to the contrary, and indeed is not on point. The quotation used by the *AOV Industries* majority dealt with the ability of an appellate court to resolve an issue not passed upon below, not with the question of the court taking new evidence on appeal.