# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 24, 2014      Decided December 12, 2014

No. 13-7095

PATRICK RUSSELL, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED,
APPELLANT

v.

HARMAN INTERNATIONAL INDUSTRIES, INC., ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-02212)

*Thomas J. McKenna*, pro hac vice, argued the cause for the appellant. *Toyja E. Kelley* and *John B. Isbister* were with him on brief.

*Sara Pikofsky* argued the cause for the appellees. *Evan Miller* was with her on brief. *Thomas F. Cullen, Jr.* entered an appearance.

Before: HENDERSON, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: This appeal involves the conversion process set forth in Rule 12(d) of the Federal Rules of Civil Procedure. That rule provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(d). Patrick Russell, the appellant, complains that the district court converted the appellees' motion to dismiss and granted them summary judgment without giving him a "reasonable opportunity" to present evidence. But we do not reach that issue because, assuming *arguendo* that the district court violated Rule 12(d), the error would be harmless in this case. For that reason, we affirm.

## I. BACKGROUND

Patrick Russell is a former employee of Harman International Industries, Inc. Russell participated in Harman's 401(k) plan, which invests primarily in Harman common stock. In April 2007, Harman issued a press release claiming that two investment firms had agreed to acquire the company. That deal ultimately fell through, triggering a corresponding decline in the value of Harman's stock. Russell alleges that the deal failed because agents of Harman made false and misleading statements to the investment firms. He contends that these statements constituted a breach of fiduciary duty in violation of the Employee Retirement Income Security Act (ERISA). In December 2007, Russell filed a class-action complaint against Harman and various individuals associated with the company (collectively, Harman).

When he filed suit, Russell no longer worked for Harman. Six months earlier, Russell had signed a severance agreement that included the following release of liability:

Release of Known and Unknown Claims.

Employee . . . releases and forever discharges the Company, its affiliates, and all of their agents . . . of and from *any Claim* (as defined below) which have [sic] *arisen on or before the date that this Agreement becomes effective*. . . . The Claims released by this agreement include, but are not limited to, Claims arising out of, based upon, or relating to . . . the Employee Retirement Income Security Act . . . .

Employee expressly acknowledges, agrees and recites that: (i) this Agreement is written in a manner he understands; . . . (iii) he has entered into and executed this Agreement knowingly and voluntarily; (v) [sic] he has read and understands this Agreement in its entirety; and (vi) he has not been forced to sign this Agreement by any employee or agent of the Company.

Aug. 5, 2008 Mot. to Dismiss, Ex. 1 (emphasis added). In return for his signature, Harman gave Russell severance payments he was not otherwise entitled to receive. The severance agreement advised Russell to consult a lawyer before signing and gave him seven days to do so. Russell did not avail himself of that opportunity.

Harman used the severance agreement's release as the basis for a motion to dismiss under Rule 12(b)(6). The motion contended that Russell gave up his right to bring an ERISA action. To support this defense, Harman attached the severance agreement as an exhibit to the motion. After

holding the case under advisement for some time, the district court ordered supplemental briefing and asked the parties to address the meaning of the phrase (emphasized above) "any Claim . . . arisen on or before the date that this Agreement becomes effective." The order did not expressly mention Rule 12(d) or the possibility of converting Harman's motion to dismiss into one for summary judgment. Harman and Russell promptly submitted their supplemental briefs. Although the district court asked the parties to address only one issue, Russell's brief addressed many more. He argued that (1) his claims did not "arise[]" under the terms of the severance agreement, (2) he did not knowingly and voluntarily waive his ERISA rights, (3) the severance agreement could not waive the claims of other plan members and (4) the severance agreement was void as against public policy. *See* Feb. 28, 2013 P's Opp. to D's Supp. Memo. 2–7.

The district court rendered its decision in May 2013. For the first time, the district court expressly invoked Rule 12(d) and converted Harman's motion to dismiss into one for summary judgment. In its decision, the district court determined, among other things, that Russell had knowingly and voluntarily waived his ERISA rights by signing the severance agreement. The district court relied on the following factors:

> the Agreement states clearly the consideration Russell received for entering into the Agreement, highlights the rights that Russell released, uses clear and precise language to describe the scope of that release, provides that Russell had time to consider the Agreement, and counsels him to consult an attorney.

*Russell v. Harman Int'l Indus., Inc.*, 945 F. Supp. 2d 68, 76 (D.D.C. 2013). The district court then entered summary judgment for Harman.

Russell timely appealed. Our jurisdiction arises under 28 U.S.C. § 1291.

## II. DISCUSSION

Russell properly raises one argument on appeal.[1] He contends that the district court violated Rule 12(d) by entering summary judgment without giving him a "reasonable opportunity" to present evidence. But we do not decide whether the district court violated Rule 12(d) because, assuming it did, the error would be harmless. *See* 28 U.S.C. § 2111.

A district court's failure to comply with the procedural safeguards of Rule 12(d) does not constitute reversible error if it did not *prejudice* the parties. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Hollis v. Dep't of Army*, 856 F.2d 1541, 1544 (D.C. Cir. 1988). Here, Russell suffered no prejudice because, even had he obtained his now-desired discovery, he could not demonstrate a "genuine issue of material fact" sufficient to prevail at summary judgment. *See Colbert v. Potter*, 471 F.3d 158, 168 (D.C. Cir. 2006); *Holy Land*, 333 F.3d at 165; *Hollis*, 856 F.2d at 1544 n.34.

---

[1] Russell also attempts to argue—for the first time in his reply brief—that the severance agreement covers only Harman itself, not the individual defendants. We decline to consider this argument because Russell forfeited it. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (arguments raised for first time in reply brief are forfeited).

Russell complains that the district court did not afford him discovery on whether he knowingly and voluntarily consented to the severance agreement. We generally require waivers of liability to be "knowing and voluntary" in the context of Title VII. *See United States v. Trucking Emp'rs, Inc.*, 561 F.2d 313, 318 (D.C. Cir. 1977) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974)). Most of our sister circuits have extended the knowing-and-voluntary requirement to the ERISA context as well. *See, e.g.*, *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 181 (1st Cir. 1995); *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1367 (2d Cir. 1991); *Jakimas v. Hoffmann–La Roche, Inc.*, 485 F.3d 770, 781 (3d Cir. 2007); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 373 n.6 (5th Cir. 2002); *Howell v. Motorola, Inc.*, 633 F.3d 552, 559 (7th Cir. 2011); *Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990); *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1012 (9th Cir. 1997); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1293 (10th Cir. 1991). Our precedent is unclear. *Compare Trucking Emp'rs*, 561 F.2d at 318 (Title VII waivers must be knowing and voluntary), *and Brown v. Brody*, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999) (Title VII jurisprudence is instructive in interpreting ERISA), *with Makins v. Dist. of Columbia*, 277 F.3d 544, 547 (D.C. Cir. 2002) (declining to apply knowing-and-voluntary requirement to Title VII waiver in settlement agreement). We see no reason to take a position in this case because the parties agree that the knowing-and-voluntary standard applies. We will therefore assume, *arguendo*, that an employee must knowingly and voluntarily consent to a waiver of ERISA liability.

Our sister circuits rely on a non-exhaustive list of factors to determine whether, under the totality of the circumstances,

an ERISA waiver is knowing and voluntary. The following list from the Second Circuit is representative:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Laniok*, 935 F.2d at 1368 (brackets omitted).

Russell contends that he needed discovery on each and every one of these factors. But at least two of the factors—Factors 4 and 6—are apparent from the face of the severance agreement. Granted, the remaining factors ordinarily require the district court to evaluate not only characteristics unique to the employee but also the circumstances surrounding his assent to the waiver. But here, those factors are all matters within Russell's *own* knowledge. Russell knows his education and business experience, the role he played in deciding the terms of the agreement and whether he consulted counsel. If Harman had pressured or coerced Russell into signing the release, Russell would undoubtedly be aware of it. Despite the length of this litigation, Russell has never proffered any evidence to undermine the knowing-and-voluntary nature of his consent or identified a plausible line of

inquiry for discovery that might lead to evidence creating a disputed issue of material fact.[2]

Accordingly, Russell was not prejudiced by his lack of discovery. Russell's failure to suggest any reason why his consent to the severance agreement was unknowing or involuntary convinces us that discovery would be futile. We decline to remand a case when discovery would amount to "nothing more than a fishing expedition" because the appellant is "unable to offer anything but rank speculation." *Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997). Thus, the district court's violation of Rule 12(d), assuming it occurred, would be harmless error. *See Colbert*, 471 F.3d at 168–69; *Holy Land*, 333 F.3d at 165–66.

Of course, our harmless-error analysis is confined to the unique circumstances of this case. It bears repeating:

> We do not propose that in every case in which a
> district court improperly goes beyond the pleadings

---

[2] In his reply brief, Russell makes two challenges to the severance agreement—both of which border on the conspiratorial. First, Russell complains that the Harman agent who signed the severance agreement signed her name with one pen but dated her signature with another pen. Putting aside an obvious, innocent explanation for this discrepancy—that the first pen ran out of ink—the sufficiency of *Harman's* consent to the severance agreement says nothing about the sufficiency of *Russell's* consent. Only the latter matters under the knowing-and-voluntary standard.

Second, Russell notes that he signed the severance agreement the same day he received it, even though Harman gave him seven days to consider it. Russell appears to be suggesting that Harman pressured him into signing the severance agreement before he could fully examine it. Yet, if such pressure occurred, Russell would know about it. His failure to come forward with any evidence of such pressure further convinces us that Russell is merely grasping at straws.

in granting a motion to dismiss without affording the protections contemplated in Rule 12[(d)], a losing party will lose once more on appeal because of its inability to show what it would have produced had it been given the opportunity. In a general case, perhaps the opportunity for discovery might have produced precisely that which was lacking.

*Holy Land*, 333 F.3d at 166. This case is not a "general case," however, because Russell neither proffered evidence nor identified a plausible line of inquiry regarding the matters on which he says discovery is needed. Stated differently, Russell "had every opportunity and incentive to produce the evidence sufficient to rebut the ample evidence supporting the [district court's] conclusion." *Id.* Because Russell has failed to show prejudice resulting from his lack of discovery, we conclude that the district court's assumed error was harmless.

For the foregoing reasons, we affirm the district court's grant of summary judgment.

*So ordered.*