NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0746n.06

No. 14-4076

FILED
Nov 12, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ALBERT H. SCHEMPP, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Northern |
| | ) | District of Ohio |
| GC ACQUISITION, LLC; GLASTIC | ) | |
| CORPORATION SUPPLEMENTAL | ) | |
| EXECUTIVE RETIREMENT PLAN "A"; | ) | |
| ROCHLING GLASTIC COMPOSITES, | ) | |
| LP; JOHN DOES 1-5, | ) | |
| | | |
| Defendants-Appellees. | | |

_____/

**Before: GUY, BATCHELDER, and GIBBONS, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Plaintiff, Albert Schempp, appeals the district court's grant of Defendants' motion to dismiss this case and the court's denial of Schempp's motion for summary judgment. Schempp claims he was entitled to lifetime pension benefits under Defendant, Glastic Corporation's Supplemental Executive Retirement Plan A ("SERP A"). The district court ruled that Schempp waived his rights

to benefits under SERP A because he entered an agreement that superseded SERP A. For the following reasons we **AFFIRM**.

## I.

Schempp was President of Glastic Corporation until he retired in 1992. In 1994, he began receiving lifetime monthly pension benefits in the amount of $4,556 per month under SERP A. The parties agree that SERP A was an employee pension benefit plan as defined under 29 U.S.C. § 1002(2)(A) of ERISA, although there is some dispute as to whether the plan was a funded plan or an unfunded, "top-hat" plan under ERISA.

In 2005, Glastic notified Schempp that it was terminating SERP A effective January 1, 2006. The reason for the termination is disputed. Glastic claims that it was due to adverse economic circumstances while Schempp claims it was done to reduce the company's liabilities so that the company would be more attractive to purchasers. The Glastic board of directors prepared a consent resolution to terminate the plan, which the then president and vice president–Patrick Greene and Mark DiGiampietro, respectively– purportedly signed. Glastic has not provided a copy of the signed resolution–a fact that Schempp notes without arguing it has any effect on the present appeal. Schempp does claim that the resolution was inadequate to terminate SERP A for reasons discussed below. Schempp stopped receiving payments under SERP A in January 2006.

In March of 2006, the Glastic board approved what is referred to as the 2006 Agreement, which provided retirement benefits to Schempp and others for a fixed rather than open-ended period of time. The 2006 Agreement also provided certain

benefits not allowed under SERP A. First, if Schempp died before all payments had been made, his designated beneficiary would receive the remaining payments. Second, if he was still living in July 2014, he would receive an additional benefit. Schempp received $4,556 per month through December of 2013.

Glastic Corporation became "Rochling Glastic Composites, LP" in 2007.

Schempp did not challenge the fact that he was not receiving benefits from SERP A until he filed the present lawsuit in the fall of 2013, right before the 2006 Agreement's benefits were set to end in 2014. It was then that Schempp began to actively argue that SERP A was never properly terminated and he was entitled to benefits thereunder.

Glastic filed a motion to dismiss Schempp's claim arguing that Schempp had waived his rights to SERP A benefits and that his claim was otherwise time-barred pursuant to a provision in the 2006 Agreement. Schempp filed a motion for summary judgment. The district court granted Glastic's motion to dismiss, which it treated as a motion for summary judgment. The court declined to rule on whether SERP A was properly terminated and ruled that "Plaintiff and Defendants voluntarily entered into the 2006 Agreement to supersede SERP A and the rights therefrom" and that Schempp, therefore, waived his rights under SERP A. The court denied Schempp's motion for summary judgment.

**II.**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III.

**Waiver of Rights under SERP A**

*Amendment Provision*

SERP A included the following provision, entitled "AMENDMENT OF PLAN": "Any amendment to or termination of this Plan made after the effective date, must be agreed upon to in writing in advance of such change by the Board of Directors and G.E. Grant and R.E. Donnelly." Schempp argues that he is still entitled to benefits under SERP A because SERP A was never terminated in accordance with this provision because Grant and Donnelly did not sign it. Schempp also argues that because the 2006 Agreement did not comply with this provision, it could not affect his rights to SERP A benefits.

At the time of SERP A's execution, Grant and Donnelly served as Glastic's president and vice president, respectively. They, along with Schempp, were also three of

the four intended beneficiaries under SERP A.  The district court ruled that the provision

was ambiguous noting:

> The Amendment Clause is ambiguous because it is unclear in which capacity Grant's and Donnelly's signatures were required. Grant and Donnelly played multiple roles in the negotiation; not only were they President and Vice President at Glastic, they were also intended recipients of the SERP A benefits.  Because of this, the requirement of Grant's and Donnelly's signatures for any amendment to or termination of SERP A could be interpreted in one of three ways: (1) the clause required the signatures of Grant and Donnelly in their personal capacities, specifically; (2) the clause required the signatures of Glastic's President and Vice President, whomever they may have been at the time the amendment or termination was sought; or (3) the clause required the signatures of two persons representing the intended recipients of SERP A benefits at the time the amendment or termination was sought.

The district court ruled that making a determination about how the Amendment Clause

should be interpreted was unnecessary "because the 2006 Agreement was a valid bilateral

modification of SERP A."

We agree.  Certainly the Amendment Clause would control if Glastic unilaterally

terminated or modified the Plan–an action that would affect all participants and

beneficiaries.  But here, Schempp entered into a bilateral agreement to modify *his* rights

under SERP A (discussed below) rather than amend or terminate the Plan as a whole, and

nothing in the Amendment Clause limits his ability to do that.  As a result, the

Amendment Clause does not govern the 2006 Agreement.

### *Validity of Waiver*

Because we hold that the Amendment Clause does not control Schempp's waiver

of rights to SERP A benefits, we next consider whether the 2006 Agreement was a valid

waiver of such rights. The district court held that "[t]he 2006 Agreement, on its face, replaces any rights [Schempp] may have had under SERP A." The following provision from the Agreement's recitals provision was dispositive for the district court: "It is the intent of the parties that this Agreement, a modification of [SERP A], and all deferrals of compensation and distributions made pursuant to it, complies with Section 409A of the Internal Revenue Code of 1986, as amended."

Schempp challenges this argument, under various theories. First, Schempp argues that because the 2006 Agreement does not use the word "waiver" or note that it is a "settlement agreement," then the 2006 Agreement cannot affect his rights under SERP A. But the 2006 Agreement explicitly says that it is a modification of SERP A. The recitals also note that:

> Believing, because of significant adverse financial conditions, that [Glastic] could no longer continue to make payments under [SERP A], the Board of Directors . . . previously resolved to terminate [SERP A] . . . Despite its financial difficulties, [Glastic] now has determined that it can continue to provide a limited supplemental retirement benefit [to] the Participant . . . .

The agreement makes clear that it is modifying his rights to SERP A benefits. The absence of the specific language Schempp references does not change that fact.

Second, Schempp argues that the 2006 Agreement could not modify Schempp's rights to SERP A benefits because he could not agree to modify something that he already believed was terminated. To support this claim, Schempp filed an affidavit with the district court, which stated that at the time of the 2006 Agreement, he believed that SERP A was properly terminated but he also believed that he had preserved any rights he

had regarding SERP A benefits.  Schempp's statements are contradictory.  How could he truly believe SERP A was terminated if he also believed that he maintained rights under SERP A?  What is more, his affidavit contradicts his response filed to Glastic's motion for summary judgment.  There Schempp states that Glastic entered into the 2006 Agreement in order to "avoid a major dispute," which demonstrates he questioned whether SERP A was properly terminated.  Emails between Schempp's attorney and Glastic's counsel also demonstrate that the 2006 Agreement was intended to settle a dispute relating to Schempp's continued right to SERP A benefits.  In those emails, Schempp's counsel referred to the 2006 Agreement as a "settlement arrangement" and noted that the agreement was "in lieu of the current SERP plans."[1]

Schempp argues that such extrinsic evidence should not be considered–a curious position given that he submits his own extrinsic evidence (his affidavit) to establish his understanding of the 2006 Agreement.  Regardless, such evidence is properly considered to the extent there is any doubt as to the meaning of the modification language in the agreement.  *See Shifrin v. Forest City Enters., Inc.*, 64 Ohio St. 3d 635, 638 (1992).  Considering such evidence, no reasonable fact finder could find that the 2006 Agreement was anything other than a waiver of Schempp's rights to SERP A benefits.

---

[1] Schempp challenges the admissibility of these emails arguing that they are:  (1) subject to the attorney-client privilege; and (2) that they are inadmissible under Rule 408 of the Federal Rules of Evidence because they relate to a statement made in settlement negotiations.  Both arguments fail.  First, the emails noted above were between Schempp's attorney and opposing counsel in settlement negotiations, and not subject to the attorney-client privilege.  *See State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St. 3d 261, 265 (2005).  And, Schempp has waived his right to challenge the emails under Rule 408 as he previously relied on such emails before the district court.  *See Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 633 (6th Cir. 2013) (noting that arguments not raised before the district court are generally waived on appeal).

Schempp next argues that because the consideration referenced in the 2006 Agreement was not Schempp's explicit waiver of claims to SERP A benefits, this evinces that Schempp did not waive such claims. Schempp offers no law to support this claim and we find none. The 2006 Agreement was undoubtedly supported by consideration – the parties do not dispute this. And, as discussed above, the Agreement was clearly a modification of Schempp's rights under SERP A. Schempp's claim on this point fails.

Finally, Schempp argues that he was coerced into signing the 2006 Agreement. The only fact that Schempp offers to support this claim is that Glastic had stopped payment of his SERP A benefits in December of 2005, and he was therefore in a "disadvantaged position." However, Schempp was represented by an attorney who extensively negotiated the 2006 Agreement–an arms-length transaction. Certainly Schempp could have challenged Glastic's termination of SERP A benefits at that time, but he chose to accept the 2006 Agreement instead. Such situation does not constitute coercion. *See Blodgett v. Blodgett*, 49 Ohio St. 3d 243, 246 (1990) (holding that a party's acceptance of a settlement agreement because she could not afford to wait for the outcome of an appeal does not constitute coercion).

### Was Waiver Made Knowingly and Voluntarily

In his reply brief, Schempp, argues that the district court erred in analyzing the 2006 Agreement under simple contract law. Citing *Frommert v. Conkright*, 535 F.3d 111 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 506 (2010), Schempp argues that

ERISA requires consideration of another factor–whether such waiver was made knowingly and voluntarily. This court has not previously ruled on whether a waiver of rights under an ERISA pension plan must be made knowingly and voluntarily to be valid. Other circuits to have considered the issue have generally applied the knowing-and-voluntary requirement in this context. *See Russell v. Harman Intern. Indus., Inc.*, 773 F.3d 253, 255-56 (D.C. Cir. 2014) (compiling cases). When evaluating whether the knowing-and-voluntary requirement is satisfied, other circuits generally consider the following, non-exhaustive list of factors:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id*. at 256 (citing *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1368 (2d Cir. 1991)).

Assuming without deciding that the knowing-and-voluntary requirement applies in this case, we are convinced that a rational trier of fact would conclude that Schempp both knowingly and voluntarily waived his rights under SERP A. Schempp was President of Glastic Corporation before he retired, which demonstrates a high level of business experience. Schempp's lawyer had access to the 2006 Agreement for enough time to thoroughly review it, discuss various provisions with Schempp, and negotiate various

terms with Glastic. The agreement is clear. Finally, ample consideration was given for Schempp's assent. In fact, if Schempp were to die before all of the benefits under the 2006 Agreement had been paid out, he was in a position to gain *more* than he would have received under SERP A as SERP A did not provide a payment to his beneficiary in such situation.[2]

   **AFFIRMED.**

---

[2] Because we hold that Schempp waived his rights to SERP A benefits, we need not consider the question of whether SERP A was properly terminated or the effect of the one-year limitations provision.